PRESENT: Carrico, C.J., Lacy, Hassell, Keenan, Kinser, and
Lemons, JJ., and Stephenson, S.J.

BILLIE A. GOLDING, t/a GOLDING APPRAISAL COMPANY
                                        OPINION BY
v.  Record No. 000142    SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
                                        January 12, 2001
ROBERT K. FLOYD, JR., ET AL.


            FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                  Paul F. Sheridan, Judge Designate

     This appeal presents the question whether there exists

between the parties to an underlying action at law a binding

contract to settle the action.

                                 I

     The underlying law action involved the sale of an appraisal

business.  Robert K. Floyd, Jr., and Richard J. Varney were to

purchase the business through Floyd & Varney, L.L.C.

(collectively, Floyd and Varney) from Billie A. Golding.  When

the sale failed to transpire, Floyd and Varney opened their own

appraisal business, and Golding filed suit.

     The parties agreed to mediate their dispute, and, on

December 10, 1998, a mediation conference was conducted.  At the

conclusion of the conference, the parties signed a handwritten

document entitled "Settlement Agreement Memorandum" (the

Memorandum).  The Memorandum contains 14 paragraphs, and the

final paragraph reads as follows:

14. This memo of settlement agreement contains the highlights of the terms and conditions and ~~the parties agree to execute~~ is subject to execution of a formal agreement consistent with the terms herein.

(Emphasis added.) Thereafter, further negotiations failed, and a formal agreement was never executed.

Floyd and Varney filed a motion to confirm the settlement agreement and to dismiss the action. In response, Golding moved for summary judgment, contending that the Memorandum was not a binding agreement because, by its plain language, it was "subject to" the execution of a formal agreement.

The trial court rejected Golding's contention and concluded that an evidentiary hearing was required in order to determine the intent of the parties. Following an evidentiary hearing, the court ruled that a binding settlement had been reached when the parties signed the Memorandum. Thereupon, the court dismissed Golding's action with prejudice. We awarded Golding this appeal.

II

It is firmly established that, when the terms of a contract are clear and unambiguous, a court is required to construe the terms according to their plain meaning. Bridgestone/Firestone v. Prince William Square, 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995); Foods First, Inc. v. Gables Associates, 244 Va. 180, 182, 418 S.E.2d 888, 889 (1992); Winn v. Aleda Const. Co., 227

2

Va. 304, 307, 315 S.E.2d 193, 194-95 (1984).  "The guiding light . . . is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." Magann Corp. v. Electrical Works, 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962).  Thus, if the intent of the parties can be determined from the language they employ in their contract, parol evidence respecting their intent is inadmissible.  Amos v. Coffey, 228 Va. 88, 91-92, 320 S.E.2d 335, 337 (1984).  " 'An ambiguity exists when language admits of being understood in more than one way or refers to two or more things at the same time.' "  Id. at 92, 320 S.E.2d at 337 (quoting Renner Plumbing v. Renner, 225 Va. 508, 515, 303 S.E.2d 894, 898 (1983)).

### III

Golding contends, inter alia, that, "[a]s a matter of law, the language in [the] Memorandum making [the] settlement 'subject to execution of a formal agreement' clearly and unambiguously created a condition precedent and barred extrinsic evidence."  Floyd and Varney, on the other hand, contend that the words, "subject to execution of a formal agreement," do not, as a matter of law, mandate a finding that the Memorandum was non-binding.  They assert that the trial court correctly considered extrinsic evidence to discern the intent of the parties.

3

Boisseau v. Fuller, 96 Va. 45, 30 S.E. 457 (1898), is strikingly similar to the present case. In Boisseau, the parties signed a document respecting the leasing of certain property. The document designated the property to be leased, the amount of rent to be paid, and the term of the lease. However, the last sentence of the document stated the following: "The above to be covered by a regular lease subject to approval by all parties." Id. at 46, 30 S.E. at 457.

We held, in Boisseau, that, due to the document's last sentence, there could not be a binding contract "until the formal writing, contemplated by the language used, has been prepared, approved, and executed, in accordance with the intention of the parties." Id. at 48, 30 S.E. at 458. In so holding, we stated the following:

> "It comes, therefore, to this, that where you have a proposal or agreement made in writing expressed to be subject to a formal contract being prepared, it means what it says; it is subject to and dependent upon a formal contract being prepared. Where it is not expressly stated to be subject to a formal contract it becomes a question of construction whether the parties intended that the terms agreed on should merely be put into form, or whether they should be subject to a new agreement, the terms of which are not expressed in detail."

Id. at 47, 30 S.E. at 458 (quoting Winn v. Bull, 7 Ch. Div. 29-32); accord Manss-Owens Co. v. Owens & Son, 129 Va. 183, 196, 105 S.E. 543, 547 (1921); Adams v. Hazen, 123 Va. 304, 320, 96 S.E. 741, 745 (1918).

4

Since Boisseau and until the present case, we are unaware of any Virginia cases involving a writing that was expressly "subject to" the execution of a formal contract. On the other hand, we have found binding agreements, both oral and written, where the parties' intention to be bound is objectively manifested even though a subsequent formal agreement is contemplated. See, e.g., Snyder-Falkinham v. Stockburger, 249 Va. 376, 457 S.E.2d 36 (1995); North American Mgrs. v. Reinach, 177 Va. 116, 12 S.E.2d 806 (1941); Agostini v. Consolvo, 154 Va. 203, 153 S.E. 676 (1930).

In Snyder-Falkinham, we affirmed the trial court's finding that the plaintiff had orally agreed to a binding settlement, and we concluded that her intention to compromise had been objectively manifested. 249 Va. at 385, 457 S.E.2d at 41. We reached this conclusion "even though [the] parties contemplated that a formal, written 'Mutual Release and Settlement Agreement' memorializing the compromise would be executed." Id. We also noted that "'the mere fact that a later formal writing is contemplated will not vitiate the agreement.'" Id. (quoting Reinach, 177 Va. at 121, 12 S.E.2d at 808).

The distinction between Snyder-Falkinham and the present case is apparent. In Snyder-Falkinham, the parties had fully agreed, and the later formal writing was contemplated only as a mere formality. In the present case, like Boisseau, the initial

5

writing was made <u>subject to</u> and was dependent upon the execution of a formal contract.

IV

We conclude, therefore, that the Memorandum in the present case is clear and unambiguous, and no extrinsic evidence is required, or even allowed, to ascertain the intention of the parties as objectively manifested.  Indeed, the Memorandum was amended before the parties signed it by striking the language, "the parties agree to execute" a formal agreement, and inserting in its place the language that the Memorandum "is subject to execution of" a formal agreement.  The execution of a formal agreement, therefore, was a condition precedent to the existence of a binding contract.  A formal contract was never executed; as a result, no contract exists.

Thus, we hold that the trial court erred in finding the existence of a binding contract and in dismissing the underlying action.  Accordingly, we will reverse and vacate the trial court's judgment, reinstate Golding's cause of action, and remand the case for further proceedings.

<u>Reversed and remanded</u>.