COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judge McClanahan and Senior Judge Fitzpatrick
Argued at Richmond, Virginia


STEPHEN L. BRYANT

v.      Record No. 3028-05-2

KERREN B. McDOUGAL

OPINION BY
CHIEF JUDGE WALTER S. FELTON, JR.
NOVEMBER 21, 2006


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
George F. Tidey, Judge Designate

Todd M. Ritter (Travis R. Williams; Daniels & Morgan, on brief),
for appellant.

No brief or argument for appellee.


Appellant Stephen L. Bryant (husband) appeals from his final decree of divorce from Kerren

B. McDougal (wife). He contends the trial court erred in finding that he had entered into a valid and

binding property settlement agreement with wife, and in incorporating the terms of the purported

agreement into the final decree of divorce. For the reasons that follow, we reverse the judgment of

the trial court.

I.  BACKGROUND

"On appeal, we construe the evidence in the light most favorable to wife, the prevailing

party below, granting to that evidence all reasonable inferences fairly deducible therefrom." Wright

v. Wright, 38 Va. App. 394, 398, 564 S.E.2d 702, 704 (2002). So viewed, the evidence established

that the parties married in June 1992. No children were born of the marriage. In January 2004,

husband filed a Bill of Complaint for a no-fault divorce. Wife responded in June 2004 by filing an

Answer and Cross-Bill requesting that she be granted a divorce *a mensa et thoro* on grounds of

desertion with leave to merge the divorce into a divorce *a vinculo matrimonii* at the end of the

statutory period. Wife also requested that she be awarded permanent spousal support and equitable distribution.

On July 21, 2005, the parties convened in the office of wife's counsel for the purpose of conducting depositions. At that time, husband appeared without counsel. Instead of proceeding with the scheduled depositions, the parties negotiated the distribution of their marital assets and debts. Upon conclusion of the negotiation, wife's counsel read the terms of the purported oral agreement into the record in the presence of a court reporter. Wife's counsel then asked wife if "this [is] the agreement as to your knowledge?" Wife responded, "Yes, it is." Wife's counsel then engaged husband in the following colloquy:

> [WIFE'S COUNSEL]: Do you acknowledge that these are the terms that you and Dr. McDougal have agreed to resolving the entire matter between the two of you?
>
> [HUSBAND]: I acknowledge that this outlines the substance, the essential substance of an agreement that is subject to being put into a Property Settlement Agreement, a fully completed Property Settlement Agreement. Yes. I do acknowledge that.
>
> [WIFE'S COUNSEL]: Will you acknowledge that these are the terms that you and Dr. McDougal have agreed to as resolving the entire divorce matter, and that there are no outstanding matters between the two of you to resolve the divorce? There are no property interests or any debt that needs to be discussed. These are all of the terms between you and Dr. McDougal?
>
> [HUSBAND]: No. Subject to inclusion into a Property Settlement Agreement.
>
> [WIFE'S COUNSEL]: All the terms that you have agreed to with Dr. McDougal, it will be put into a Property Settlement Agreement that you will sign. Is that correct?
>
> [HUSBAND]: Yes.

In a letter dated July 22, 2005, husband told wife's counsel that, "It has consistently been [his] understanding that the general terms of the property settlement . . . would be memorialized in a written separation agreement." Husband then advised that

> it ha[d] never been [his] intention to rely solely on oral evidence read into the record as a final disposition of [] property rights [and that] [i]t ha[d] consistently been [his] offer that [he] would be afforded the opportunity to review the property settlement with independent counsel of [his] choosing before execution.

Husband reasserted his "right to review the proposed Property Settlement Agreement with independent counsel before signing" the agreement in a July 25, 2005 letter to wife's counsel. Subsequently, both parties drafted and circulated written property settlement agreements. However, neither party signed the other's proposed agreement.

On August 11, 2005, wife filed a Motion to Affirm, Ratify and Incorporate the terms of the July 21, 2005 purported oral property settlement agreement. She also filed a Notice of Presentation of the Final Decree of Divorce. A hearing was held on November 9, 2005, at which husband objected to the validity of the July 21, 2005 oral agreement on the basis that no meeting of the minds had occurred. The following day, the trial court entered a Final Decree of Divorce in which the terms of the July 21, 2005 agreement were affirmed, ratified, and incorporated into the final decree.

## II. ANALYSIS

Husband argues that the July 21, 2005 oral property settlement agreement was invalid under Code § 20-155 for lack of mutual assent because an "agreement to sign a subsequent, written agreement is not tantamount to an affirmation that the terms recited on the record are the agreement itself."

Code § 20-155 provides that

> [m]arried persons may enter into agreements with each other for the purpose of settling the rights and obligations of either or both of them, to the same extent, with the same effect, and subject to the same conditions, as provided in §§ 20-147 through 20-154 for agreements between prospective spouses, except that such marital agreements shall become effective immediately upon their execution.

However, pursuant to Code § 20-149, such agreements are required to be in writing and signed by both parties unless the parties satisfy one of two statutory exceptions. See Code § 20-155. Pursuant to Code § 20-155, oral agreements between married persons are valid and binding if "the terms of such agreement[s] are (i) contained in a court order endorsed by counsel or the parties or (ii) recorded and transcribed by a court reporter and affirmed by the parties on the record personally."

In Gaffney v. Gaffney, 45 Va. App. 655, 613 S.E.2d 471 (2005), we concluded that "to satisfy Code § 20-155(ii)'s mandate [and thereby invoke its exception to Code § 20-149's writing requirement] . . . the terms of the [oral] agreement must be read or recited into the record in the presence of a court reporter and the parties must specifically and affirmatively manifest their assent to those terms on the record." Gaffney, 45 Va. App. at 670, 613 S.E.2d at 479. Because "property settlement agreements entered into pursuant to divorce proceedings are contracts[,] 'we must apply the same rules of interpretation applicable to contracts generally[,]'" Smith v. Smith, 3 Va. App. 510, 513, 351 S.E.2d 593, 595 (1986) (quoting Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985)), to determine whether husband specifically and affirmatively manifested his assent to the terms of the oral agreement read into the record by wife's counsel.

Under general contract principles, "[u]ltimate resolution of the question whether there has been a binding settlement [agreement] involves a determination of the parties' intention[s], as objectively manifested." Snyder-Falkinham v. Stockburger, 249 Va. 376, 381, 457 S.E.2d 36, 39 (1995) (citing Montagna v. Holiday Inns, Inc., 221 Va. 336, 346, 269 S.E.2d 838, 844 (1980); Boisseau v. Fuller, 96 Va. 45, 46, 30 S.E. 457, 457 (1898)). "Until the parties have a distinct intention common to both and without doubt or difference, there is a lack of mutual assent, and therefore, no [valid agreement]." Persinger & Co. v. Larrowe, 252 Va. 404, 408, 477 S.E.2d

- 4 -

506, 509 (1996) (citing Progressive Constr. Co. v. Thumm, 209 Va. 24, 30, 161 S.E.2d 687, 691 (1968)).

As a general rule, "the mere fact that a later formal writing is contemplated [by the parties] will not vitiate an agreement." Snyder-Falkinham, 249 Va. at 385, 457 S.E.2d at 41. See also Judicial Inquiry & Review Comm'n v. Elliott, 272 Va. 97, 121, 630 S.E.2d 485, 497 (2006). However, when at least one of the parties to a settlement agreement manifests an intent that the settlement agreement is "'subject to [the] execution of' a formal agreement[,] [t]he execution of a formal agreement [constitutes] a condition precedent[1] to the existence of a [valid and] binding [settlement agreement]." Golding v. Floyd, 261 Va. 190, 194, 539 S.E.2d 735, 738 (2001) (footnote added). See also Boisseau, 96 Va. at 47, 30 S.E. at 458 ("where [there is] a proposal or agreement . . . expressed to be subject to a formal contract being prepared, it means what it says; it is subject to and dependent upon a formal contract being prepared").

In Golding, the parties in a dispute over the sale of a business signed a handwritten document entitled "Settlement Agreement Memorandum." The last paragraph of the agreement stated that the memorandum contained "the highlights of the terms and conditions and . . . *is subject to execution of* a formal agreement consistent with the terms." Golding, 261 Va. at 192, 539 S.E.2d at 736 (emphasis in original). However, a formal agreement was never executed. The Supreme Court determined that the unambiguous language of the Settlement Agreement Memorandum created a condition precedent to the existence of a binding contract. In so doing, it distinguished its holding in Snyder-Falkinham:

> [i]n Snyder-Falkinham, the parties had fully agreed, and the later formal writing was contemplated only as a mere formality. In the

---

[1] "'A condition precedent calls for the performance of some act, or the happening of some event after the terms of the contract have been agreed upon, before the contract shall take effect.'" Smith v. McGregor, 237 Va. 66, 75, 376 S.E.2d 60, 65 (1989) (quoting Morotock Ins. Co. v. Fostoria Novelty Co., 94 Va. 361, 365, 26 S.E. 850, 851 (1897)).

present case . . . the initial writing was made *subject to and was dependent upon the execution of a formal contract*.

Id. at 194, 539 S.E.2d at 737 (emphasis added). Because a formal contract was never executed, the Court ruled that no contract had ever existed. Id. at 194, 539 S.E.2d at 738.

Here, the unambiguous language of husband's assent to the terms of the oral settlement agreement, read into the record by wife's counsel, manifested his clear intent that his affirmation of the terms was "subject to" the execution of a formal, written property settlement agreement. Husband twice stated that his assent to the terms read into the record was "subject to" their inclusion in a formal property settlement agreement. Moreover, wife's counsel acknowledged the conditional nature of husband's assent, and its variance from wife's affirmation, when she stated that "the terms that you have agreed to with Dr. McDougal [] will be put into a Property Settlement Agreement."

Pursuant to the holding in Golding, husband's conditional affirmation created a condition precedent to the existence of a binding agreement. As husband's manifested assent distinctly differed from the manifested assent of wife, the July 21, 2005 oral agreement failed to invoke Code § 20-155(ii)'s exception to Code § 20-149's writing requirement. See Persinger & Co., 252 Va. at 408, 477 S.E.2d at 509. Thus, the oral agreement was inoperable for lack of mutual assent until husband's condition precedent was satisfied. See Smith v. McGregor, 237 Va. 66, 75, 376 S.E.2d 60, 65 (1989) (when a party creates a condition precedent to the execution of a contract, the "contract is made in form, but does not become operative as a contract until some future specified act is performed, or some subsequent event occurs").

By failing to execute a written property settlement agreement, and thereby failing to satisfy husband's condition precedent, the July 21, 2005 oral property settlement agreement failed to invoke the exception to Code § 20-149's writing requirement set forth in Code § 20-155(ii). The absence of a formal written property settlement agreement definitively

established that husband and wife had not specifically affirmed the terms of the agreement, see Gaffney, 45 Va. App. at 670, 613 S.E.2d at 479, with "an intention common to both." Persinger & Co., 252 Va. at 408, 477 S.E.2d at 509. Moreover, the failure to satisfy husband's condition precedent rendered the July 21, 2005 oral agreement ineffectual. See Golding, 261 Va. at 194, 539 S.E.2d at 738 (failure to satisfy a condition precedent renders the initial agreement non-existent). Thus, no valid and binding property settlement agreement existed.

From our review of the record, we conclude the trial court erred in determining that the parties' oral agreement constituted a valid property settlement agreement under Code § 20-155. "Consequently, the trial court [also] erred in incorporating the terms of that agreement into the final decree of divorce." Gaffney, 45 Va. App. at 672, 613 S.E.2d at 479. See also Pelfrey v. Pelfrey, 25 Va. App. 239, 244, 487 S.E.2d 281, 283-84 (1997) ("When the parties have entered into a *valid* agreement, the trial court may incorporate [the terms of] that agreement . . . into its final decree of divorce."). We therefore reverse the judgment of the trial court and remand for further proceedings as may be required to determine the equitable distribution of the parties' marital estate.

Reversed and remanded.