COURT OF APPEALS OF VIRGINIA


Present:  Judges Kelsey, Petty and Senior Judge Bumgardner


CATHERINE L. HINERMAN

MEMORANDUM OPINION[*]
v.     Record No. 2343-08-4                          PER CURIAM
                                                     APRIL 14, 2009
JOHN MILTON HINERMAN


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Marcus D. Williams, Judge

(Catherine L. Hinerman, *pro se*, on briefs).

(Brian M. Hirsch; Hirsch & Ehlenberger, P.C., on brief), for
appellee.


Catherine L. Hinerman (wife) appeals the trial court's rulings regarding the interpretation of

the parties' property settlement agreement, her request for an increase in spousal support, and the

attorney fee award.  Wife argues that the trial court erred by (1) finding that there was no ambiguity

in the parties' property settlement agreement regarding their respective obligations to pay expenses

relating to their real property; (2) determining that the parties' intent did not control the

interpretation of an ambiguous provision in the agreement; (3) denying wife's request for an

increase in spousal support; (4) finding that husband had significant financial problems and could

not afford an increase in his spousal support obligation; and (5) awarding attorney fees to husband.[1]

Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] In her reply brief, wife presented another question regarding the agreement; however, this issue was not originally designated as a question presented.  Rule 5A:25(d).  Therefore, we will not consider this question.

BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 834 (2003).

So viewed, the evidence proved that on February 3, 2004, wife and John Milton Hinerman (husband) entered into a property settlement agreement (the agreement), which was affirmed, ratified and incorporated into the final decree of divorce entered on February 27, 2004. The agreement provided for the disposition of real estate located at 719 Pine Street, Herndon, Virginia (the Pine Street property) as follows:

> 4.(B) . . . The Pine Street property shall be maintained by the Wife for up to 12 months, and then it shall be sold and the proceeds divided as described herein. . . .
>
>     *      *      *      *      *      *      *
>
> (ii)(a) The Wife shall have the right to the use and possession of the Pine Street property until January 31, 2005. Thereafter, the property shall be sold as more specifically described herein.
>
> (b) Until the property is sold, the Wife shall pay and keep current the property taxes, insurance and first deed of trust note payments and all utilities associated with this property. . . .
>
> (c) If: (i) the Wife fails to pay the taxes, insurance or any deed of trust note payment associated with said property in a timely manner, or (ii) by February 1, 2005 (whichever occurs first), the parties shall immediately sell the 719 Pine Street, Herndon, Virginia property . . . .

At the time of the divorce, the parties owned a small business that operated out of the Pine Street property. Wife ran the business until February 1, 2005, when she vacated the property. In June 2005, husband received notification that the mortgage had not been paid for February, March, April, and May 2005. Husband made the payments in order to prevent foreclosure. The parties listed the property for sale, and it sold in July 2007. Husband paid the

taxes, insurance, mortgage, and utilities for the Pine Street property from February 2005 until July 2007.

In 2006, husband made a poor business deal, and his source of income, his airplane, was repossessed. Husband incurred substantial debt in order to regain his airplane. At the time of the hearing in 2008, husband's income approximately doubled since the time of the divorce; however, he also had more financial obligations. Wife's income remained approximately the same.

At trial, wife argued that the provisions in the agreement regarding the Pine Street property were ambiguous as to wife's financial obligation. The trial court disagreed and found that wife was responsible for the taxes, insurance, mortgage, and utilities for the Pine Street property from February 2005 until July 2007. The trial court further denied wife's request for an increase in spousal support and awarded husband $3,500 in attorney fees. Wife filed a motion to reconsider and/or rehear, which the trial court denied. Wife timely noted her appeal.

## ANALYSIS

### Issues 1 and 2: Interpretation of the agreement

Wife argues that the trial court erred in finding that the parties' agreement was not ambiguous and determining that the parties' intent did not control the interpretation of an ambiguous provision.

"Property settlement agreements are contracts and are subject to the same rules of construction that apply to the interpretation of contracts generally." Southerland v. Estate of Southerland, 249 Va. 584, 588, 457 S.E.2d 375, 378 (1995) (citations omitted).

> On appeal, the Court reviews a trial court's interpretation of a contract de novo. Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002) (citing Wilson v. Holyfield, 227 Va. 184, 313 S.E.2d 396 (1984)) ("we have an equal opportunity to consider the words of the contract within the four corners of the instrument itself"). The question whether contract language is ambiguous is one of law, not fact. Tuomala v.

- 3 -

> Regent University, 252 Va. 368, 374, 477 S.E.2d 501, 505 (1996).
> Thus, the trial court's conclusion regarding ambiguity is accorded
> no deference on appeal. See id.

Plunkett v. Plunkett, 271 Va. 162, 166-67, 624 S.E.2d 39, 41 (2006).

"Contract language is ambiguous when 'it may be understood in more than one way or when it refers to two or more things at the same time.'" Eure, 263 Va. at 632, 561 S.E.2d at 668 (quoting Granite State Ins. Co. v. Bottoms, 243 Va. 228, 234, 415 S.E.2d 131, 134 (1992)). "A contract term is not ambiguous merely because the parties disagree as to the term's meaning." Bergman v. Bergman, 25 Va. App. 204, 211, 487 S.E.2d 264, 267 (1994) (citations omitted). "'The guiding light . . . is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares.'" Golding v. Floyd, 261 Va. 190, 192, 539 S.E.2d 735, 737 (2001) (quoting Magann Corp. v. Electrical Works, 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962)).

Furthermore, "[t]he contract must be read as a single document. Its meaning is to be gathered from all its associated parts assembled as the unitary expression of the agreement of the parties." Berry v. Klinger, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983).

Wife argues that the language in Section 4(B), which states that she shall maintain the Pine Street property for "up to 12 months," conflicts with the language in Section 4(B)(ii)(b), which states that "[u]ntil the property is sold," wife is responsible for the taxes, insurance, mortgage, and utilities for the Pine Street property.

In looking at the agreement as a whole, the agreement stated that wife was to maintain the property for twelve months, but that she was responsible for the mortgage, insurance, taxes, and utilities until the property was sold. The discrepancy between the parties centers on the word, "maintain," which means "to care for (property) for purposes of operation productivity or appearance; to engage in general repair and upkeep." Black's Law Dictionary 973 (8th ed. 2004). The provision that wife was to maintain the property for twelve months, Section 4(B),

was consistent with the other provision, Section 4(B)(ii)(a), that she was allowed to use and possess the property until January 31, 2005, twelve months after the execution of the agreement.

The next provision, Section 4(B)(ii)(b), discussed wife's financial obligations *until the property is sold*. This provision did not address whether wife possessed the property or not. The language in the agreement is clear - - wife was responsible for the mortgage, insurance, taxes, and utilities until the property was sold.

Wife contends that the parties did not intend for her to be responsible for all of the taxes, insurance, mortgage, and utilities from February 2005 until July 2007. She testified that husband wrote a letter to her in June 2005, in which he stated that he would bring the mortgage current, that wife would be responsible for the February, March, and April 2005 mortgage payments, and thereafter, the parties would divide the mortgage payments, utilities, taxes, and lawn maintenance so that husband would be responsible for 86.5% and wife would be responsible for 13.5% of the expenses.[2] Wife testified that she accepted husband's offer in writing, but husband did not remember receiving her response. Wife did not have a copy of her response. Until December 2006, husband periodically would send wife spreadsheets showing her obligation for the "carrying costs" of the Pine Street property. Once husband consulted with an attorney, husband told wife that she owed him 100% of the mortgage payments, insurance, taxes, and utilities pursuant to the agreement and 13.5% of the lawn maintenance and other expenses. Wife's contention is that the parties' agreed that she would only be responsible for 13.5% of the expenses.

However, the parties did not modify the agreement pursuant to Section 23(F), which states that a "modification or waiver of any of the provisions of this Agreement shall be effective only if made in writing and witnessed with the same formality as this Agreement." There was no

---

[2] The parties' agreement stated that husband would receive 86.5% of the net sale proceeds and wife would receive 13.5% of the net sale proceeds.

evidence of a signed and notarized document modifying the provisions of the Pine Street property. Therefore, the agreement's original language remains in effect.

We find that the agreement is not ambiguous and the trial court's ruling is affirmed.

<u>Issues 3 and 4: Spousal support</u>

Wife argues that the trial court erred in denying her request for an increase in spousal support and in finding that husband faced nearly insurmountable financial challenges, which affected his ability to pay more in spousal support.

A trial court has broad discretion in awarding spousal support, and its ruling will not be overturned unless there is an abuse of discretion. <u>Brooks v. Brooks</u>, 27 Va. App. 314, 317, 498 S.E.2d 461, 463 (1998) (citations omitted).

"Upon [the] petition of either party the court may increase . . . spousal support and maintenance . . . as the circumstances may make proper." Code § 20-109. "The moving party in a petition for modification of support is required to prove both a material change in circumstances and that this change warrants a modification of support." <u>Schoenwetter v. Schoenwetter</u>, 8 Va. App. 601, 605, 383 S.E.2d 28, 30 (1989) (citation omitted). The material change in circumstances "must bear upon the financial needs of the dependent spouse or the ability of the supporting spouse to pay." <u>Hollowell v. Hollowell</u>, 6 Va. App. 417, 419, 369 S.E.2d 451, 452 (1988).

The trial court found that there was a change of circumstances because husband's income approximately doubled and wife's income remained approximately the same. The trial court further found that husband had incurred "substantial" financial obligations when his airplane was repossessed. Therefore, the trial court ruled, "although the Court may find that there is a material change in circumstances it doesn't warrant him to increase his spousal support given his current financial situation that also involves significant financial deficit. So I am denying any increase in spousal support."

The evidence was sufficient to prove that husband incurred substantial debts when his airplane was repossessed. He refinanced other property he owned in order to regain his airplane. He paid on the airplane note and rental payments for the hanger. He also had the Pine Street property expenses. Although his income increased since the last support order, his debts also increased.

Therefore, the trial court did not err in finding that because of husband's financial obligations, his spousal support obligation should not increase.

Issue 5: Attorney fees

Wife's remaining issue concerns the award for attorney fees; however, in her opening brief, wife failed to provide any legal authority to support her assertions.

Rule 5A:20(e) mandates that appellant's opening brief include "[t]he principles of law, the argument, and the authorities relating to each question presented . . . ." Wife did not comply with Rule 5A:20(e) because her opening brief does not contain any principles of law, argument, or citation to legal authorities or the record to fully develop her arguments regarding the award for attorney fees.

Wife has the burden of showing that reversible error was committed. See Lutes v. Alexander, 14 Va. App. 1075, 1077, 421 S.E.2d 857, 859 (1992). Unsupported assertions of error "do not merit appellate consideration." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992). Furthermore this Court "will not search the record for errors in order to interpret the appellant's contention and correct deficiencies in a brief." Id. Nor is it this Court's "function to comb through the record . . . in order to ferret-out for ourselves the validity of [appellant's] claims." Fitzgerald v. Bass, 6 Va. App. 38, 56 n.7, 366 S.E.2d 615, 625 n.7 (1988) (*en banc*). "Even pro se litigants must comply with the rules of court." Francis v. Francis, 30 Va. App. 584, 591, 518 S.E.2d 842, 846 (1999).

- 7 -

We find that wife's failure to comply with Rule 5A:20(e) is significant, so we will not consider the attorney fees issue.  See Fadness v. Fadness, 52 Va. App. 833, 851, 667 S.E.2d 857, 866 (2008) ("If the parties believed that the circuit court erred, it was their duty to present that error to us with legal authority to support their contention."); Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008).

CONCLUSION

We find that the trial court did not err in its interpretation of the parties' agreement and in its refusal to increase spousal support.  Since wife failed to comply with Rule 5A:20(e), we did not consider wife's argument regarding the award for the attorney fees.  Therefore, the trial court's ruling is summarily affirmed.  Rule 5A:27.

Affirmed.