Present:  Carrico, C.J., Lacy, Keenan, Koontz, Kinser, and Lemons, JJ.

AMERICAN SPIRIT INSURANCE COMPANY

                                        OPINION BY
v.  Record No. 000767      JUSTICE LAWRENCE L. KOONTZ, JR.
                                        March 2, 2001

FOY OWENS, D/B/A PATRICK HENRY
INSURANCE AGENCY

                FROM THE CIRCUIT COURT OF HENRY COUNTY
                       David V. Williams, Judge


    In this appeal, we consider whether the indemnification provisions contained in an agency agreement between an insurance company and its agent provide for recovery of attorney's fees and other expenses related to litigation of claims made on an insurance policy issued by the agent in breach of the agency agreement.

                              BACKGROUND

    The parties do not dispute the material facts.  On July 4, 1994, American Spirit Insurance Company (American Spirit) entered into an agency agreement with Foy B. Owens, doing business as Patrick Henry Insurance Agency (Owens).  The agency agreement permitted Owens to bind American Spirit on insurance policies issued by American Spirit "for risks that meet the requirements of [the] Company's current rates and written underwriting guidelines."

Relevant to the issue raised in this appeal, the agency agreement contained the following provisions for indemnifying American Spirit for damages arising from a breach of the agreement by Owens:

**V. INDEMNIFICATION**

. . . .

4. [Owens] shall indemnify and hold harmless [American Spirit] against any liabilities [American Spirit] may incur as a result of any act of [Owens] in violation of this Agreement or outside the scope of authority granted to [Owens] pursuant to this Agreement or any action of [Owens] which is in violation of any law or regulation, except to the extent [American Spirit] has caused, contributed to, or compounded such failure.

5. [Owens] shall also reimburse [American Spirit] for any legal or other expenses reasonably incurred by [American Spirit] in connection with investigating any such liabilities.

6. [Owens] shall promptly notify [American Spirit] upon receipt of notice of the commencement of any action relating to such liabilities, and [Owens] shall be entitled to participate in such action, or to assume the defense of such action with counsel of [his] own selection. If [Owens] assumes defense of any such action, [he] shall not be liable to [American Spirit] for any legal or other expenses subsequently incurred by [American Spirit] in connection with such action.

On August 19, 1994, Owens accepted an application for insurance on a house owned by Douglas D. Tyler that bound American Spirit to coverage of $65,000 for the structure and $45,500 for the contents. Owens had visited the property and was aware that the house was in a dilapidated state. He relied

2

upon Tyler's representation that Tyler was in the process of making major renovations to the house. Owens also based the value of the structure and its contents solely on Tyler's representations. He subsequently admitted that on the date the policy was written the market value of the property "wasn't very high," and that the structure did not meet the requirements of American Spirit's underwriting guidelines.

On September 14, 1994, Tyler's property was destroyed by fire. On May 31, 1995, after an extensive investigation, American Spirit denied Tyler's claims for loss of the structure and its contents under the policy obtained for him by Owens. American Spirit based this denial on its conclusions that Tyler had set the fire or caused it to be set and that he had made material misstatements on the application for insurance.

Tyler and his wife filed suit against American Spirit alleging breach of contract. In that case, the jury found that Tyler had been responsible for the fire and had made false statements on the application for insurance. However, the jury further found that Tyler's wife was a resident of the house as defined by the policy and that she was entitled to recover $28,500 for the losses she suffered as a result of the fire. Subsequently, on June 5, 1997, American Spirit and the Tylers entered into a settlement in which the Tylers received $18,000 in satisfaction of their claims.

On April 16, 1998, American Spirit filed a motion for judgment against Owens alleging that he had breached the agency agreement and seeking indemnification for the expenses it incurred in the investigation and litigation of the claims made under Tyler's policy. American Spirit specifically sought to recover the $18,000 paid to the Tylers and "attorney's fees, legal expenses and expert witness expenses and costs in excess of $45,000." Owens filed grounds of defense denying that he had breached the agency agreement.

On September 13, 1999, the parties filed cross-motions for summary judgment with supporting briefs. By agreement of the parties, the case was submitted to the trial court on the record and discovery depositions. In a letter opinion to counsel dated September 21, 1999, the trial court ruled that Owens had "committed a material breach of the Agency Agreement" and, thus, Owens would be required to indemnify American Spirit for the $18,000 paid to settle the Tylers' claims. The trial court further ruled that "American Spirit would be entitled to legal fees and expert fees incurred in the investigation of the matter but not for expenses incurred in the trial of the Tyler lawsuit."

In a subsequent letter opinion dated November 12, 1999, the trial court, in response to American Spirit's motion for reconsideration, adhered to its prior ruling and awarded

4

American Spirit judgment in the amount of $21,887.70, including $3,887.70 in expenses incurred in the investigation of the claims made on Tyler's policy.  By order dated January 6, 2000, the trial court entered a judgment embodying those dispositions. We awarded American Spirit this appeal.

### DISCUSSION

In Southern Railway Co. v. Arlen Realty, 220 Va. 291, 296, 257 S.E.2d 841, 844 (1979), where the right of the indemnitee was based upon an express contract, we adopted "the rule followed in the great majority of other jurisdictions . . . that the indemnitee may recover reasonable attorney's fees and expenses of litigation spent in defense of the claim indemnified against."  The indemnitee's right to recover is based upon the express terms of the contract, and where "no provision of the contract provides otherwise," that right extends to any expense reasonably incurred as a result of the breach, including the proper legal costs and expenses incurred in defending an indemnified claim made by a third party against the indemnitee. Id.; see also Appalachian Power Co. v. Sanders, 232 Va. 189, 196, 349 S.E.2d 101, 106 (1986).

In order to determine whether the agency agreement between American Spirit and Owens in this case provides for recovery of attorney's fees and expenses of litigation of an indemnified claim, we look to the parties' intentions as expressed in the

5

terms of that agreement.  Familiar principles govern our resolution of this issue.  First, where the terms of the contract are clear and unambiguous, we will construe those terms according to their plain meaning.  Bridgestone/Firestone v. Prince William Square, 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995).  "Additionally, we will not insert by construction, for the benefit of a party, a term not express in the contract." Lansdowne Development Co. v. Xerox Realty, 257 Va. 392, 400, 514 S.E.2d 157, 161 (1999).  Finally, we construe the contract as a whole, without giving emphasis to isolated terms.  Id. at 401, 514 S.E.2d at 161; see also Vega v. Chattan Associates, 246 Va. 196, 199, 435 S.E.2d 142, 143 (1993).

Owens contends that paragraphs 4, 5, and 6 of the indemnification section of the agency agreement are in conflict and ambiguous, and must be construed against American Spirit. We disagree.  We find nothing ambiguous in the terms of the agreement.  Rather, these three paragraphs, and the three paragraphs that precede them, which provide indemnification for the agent in reciprocal circumstances of liabilities arising from a breach by the company, constitute a comprehensive scheme for indemnifying each party for any loss occasioned by the breach of the other.

Specifically with respect to the claim for indemnity made by American Spirit, paragraph 4 expressly provides

6

indemnification for "any liabilities" American Spirit incurred as a result of Owens' breach of the agency agreement. Paragraph 5 provides indemnification for "any legal or other expenses . . . incurred . . . in connection with investigating any such liabilities."

Owens contends that because paragraph 5 makes specific reference to legal expenses, those expenses are by implication necessarily excluded from the term "any liabilities" in paragraph 4. We disagree. By its express terms, paragraph 5 relates only to additional expenses incurred in the investigation of claims arising from the liabilities incurred by the company as a result of the agent's breach. Nothing in the paragraph, expressly or by implication, manifests an intent to limit the meaning of the term "any liabilities" in paragraph 4, and we will not by construction supply such limitations.

Owens further contends that paragraph 6 expressly stipulates the conditions under which indemnification of litigation expenses will be available to American Spirit and, thus, is the "provision of the contract provid[ing] otherwise" which was absent in Southern Railway Co. He further contends that because the record does not demonstrate that he was given the opportunity to join in the defense of the Tylers' lawsuit against American Spirit, American Spirit is barred from seeking

indemnification of the litigation expenses it incurred in that lawsuit.

Paragraph 6 provides a mechanism for the agent to avoid indemnification of the company's litigation expenses if he elects to participate in the defense "of any action relating to such liabilities." That mechanism requires the agent to notify the company upon his receipt of notice of any action relating to the liabilities indemnified by the agent and permits him to elect to join in or assume the defense of such action. However, nothing in paragraph 6, or elsewhere in the agreement, imposes a reciprocal duty on the company to notify the agent of such actions. Nor do the terms of paragraph 6 expressly or by implication limit the company's right to recover litigation expenses to those instances where the agent has been afforded the opportunity to participate in the defense of an action and has declined to do so. The circumstances were much the same in Southern Railway Co., where we said that "[u]nless the contract of indemnity provides otherwise, the indemnitee's failure to give the indemnitor timely notice of and an opportunity to defend against the third party's claim does not bar recovery by the indemnitee against the indemnitor." Southern Railway Co., 220 Va. at 296, 257 S.E.2d at 844. In the absence of such terms, paragraph 6 has no application to the facts of this case.

In summary, we hold that under paragraph 4 of the indemnity provisions of the agency agreement, American Spirit was indemnified for "any liabilities" it incurred as the result of Owens' breach.  No express term of the agreement excludes from that indemnity the "reasonable attorney's fees and expenses of litigation spent in defense of the claim indemnified against." Accordingly, the trial court erred in failing to include such expenses in the judgment awarded to American Spirit.

CONCLUSION

Because the reasonableness of the attorney's fees and expenses of litigation sought by American Spirit was not contested below, we will reverse the judgment of the trial court with respect to the denial of the claim for those expenses and enter final judgment for American Spirit for $65,637.89 reflecting the $18,000 paid in settlement of the Tylers' claims, $43,750.19 in attorney's fees related to the investigation and defense of those claims, and $3,887.70 in other expenses related to the investigation and defense of those claims.

<u>Reversed and final judgment</u>.