PRESENT:  All the Justices

QUADROS & ASSOCIATES, P.C.

v.  Record No. 032213    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                      June 10, 2004
CITY OF HAMPTON

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Louis R. Lerner, Judge


In this appeal involving a contract dispute, we consider whether the circuit court erred in granting the defendant's motion for summary judgment.

Because this case was decided by summary judgment, we will state the facts, and the inferences fairly drawn from those facts, in the light most favorable to the nonmoving party, Quadros & Associates, P.C. (Quadros).  However, we are not permitted to draw inferences that are forced, strained, or contrary to reason.  Hansen v. Stanley Martin Cos., 266 Va. 345, 351, 585 S.E.2d 567, 571 (2003); Thurmond v. Prince William Prof'l Baseball Club, Inc., 265 Va. 59, 61, 574 S.E.2d 246, 248 (2003); Dudas v. Glenwood Golf Club, Inc., 261 Va. 133, 136, 540 S.E.2d 129, 130-31 (2001).

In August 1997, Quadros, a law firm formerly known as Quadros & Swanson, P.C., entered into a three-year contract with the City of Hampton (the City) to collect delinquent taxes, fees, and other obligations owed to the City.  The contract required the City to pay Quadros a percentage of the amounts

Quadros recovered, and to reimburse Quadros "for all third party out-of-pocket expenses."

Quadros' duties were specified in "Section Three" of the contract, entitled "Duties of Attorney," which provided in relevant part:

The Attorney shall:

(1) Send one "Demand Letter" to the delinquent debtor after the Treasurer has provided the Attorney with the name and address of delinquent taxpayers, the amount of delinquent taxes, fees and other obligations owed, the period for which taxes are owe[d] and a brief description of the reason for which taxes, fees and other obligations are owed.

(2) The Attorney shall then institute proceedings to collect taxes, fees and other obligations . . . against the delinquent debtor.

The contract further provided that either party could terminate the contract by giving a 30-day notice to the other party.

Prior to March 1999, the Treasurer's Office for the City routinely provided Quadros with a computer disk that contained detailed records relating to the delinquent tax accounts, including information on abatements and credits. An abatement is an adjustment of tax liability made by the Commissioner of the Revenue, which results in a reduction in the total amount owed on a particular account. A credit is a reduction in tax liability based on a payment made by a taxpayer. Such abatement and credit information was necessary for Quadros to make an

accurate determination of the total amount of taxes due on a particular account.

In March 1999, after new computer software was installed in the City Treasurer's Office, the City no longer provided Quadros with abatement and credit information for the delinquent tax accounts. Quadros informed the City that collection actions on the delinquent accounts could not be initiated without the necessary data on abatements and credits, and requested the City to provide this information.

The City refused Quadros' request. However, the City continued to refer new accounts to Quadros for collection through the beginning of the year 2000.

In July 2000, frustrated by its inability to take action on the delinquent accounts, Quadros stopped all work on the collection of accounts for tax years prior to 1999. Quadros turned over to the City all materials and files in its possession relating to those accounts.

Quadros filed a motion for judgment against the City alleging that the City breached the parties' contract by the City's "failure and refusal" to provide Quadros with the necessary abatement and credit information for the delinquent accounts. Quadros asserted that the City's failure to provide the required data prevented Quadros from fulfilling its obligations under the parties' contract, resulting in

3

"substantial losses of revenues and profits." Quadros sought damages "in the amount of at least $160,000.00" to recover "net profits" that Quadros alleged it would have earned on delinquent accounts through the end of August 2000.

In response, the City filed a motion for summary judgment based on various grounds, including that the City had no obligation under the contract to refer any accounts to Quadros for collection. The City asserted that under the plain and unambiguous language of the contract, Quadros was not required to begin collection action on an account until after the City had provided all the information outlined in "Section Three" of the parties' contract.

At a hearing on the City's motion, counsel for Quadros conceded that the contract did not require the City to refer a particular number of delinquent accounts to Quadros for collection. However, he asserted that "[t]here was an expectation on the part of Quadros . . . that the City would cooperate in the process," and that the City failed to provide such cooperation. Counsel for Quadros also stated that he did not think that the City had failed to pay Quadros for any amounts Quadros had already collected.

The circuit court granted the City's motion for summary judgment. Quadros appeals.

4

Quadros argues that the circuit court erred in granting the City's motion for summary judgment because there were material facts in dispute concerning whether the City had withheld from Quadros abatement and credit information on the delinquent accounts. Quadros contends that the contract obligated the City to provide Quadros with this information for tax accounts that had been referred for collection because such information was necessary to determine the amount of delinquent taxes owed.[*]

In response, the City argues that the circuit court properly granted the motion for summary judgment because there were no material facts genuinely in dispute, and the plain language of the contract did not require the City to furnish Quadros with any particular number of accounts for collection. The City further contends that it had no duty under the contract to provide Quadros with abatement and credit information, or with any other data, pursuant to a fixed time schedule. Finally, the City observes that while the contract obligated the City to pay Quadros a percentage of the taxes Quadros actually collected, Quadros does not contend that the City failed to make any such required payments. We agree with the City's arguments.

---

[*] We do not consider Quadros' additional arguments that the City had a duty to perform its contractual obligations in "good faith," and that the City breached the parties' contract by its alleged failure to perform those obligations in "good faith." Those arguments were the subject of separate assignments of

5

We construe the parties' contract under established rules. A contract must be construed as written, and courts are not at liberty to add terms not included by the parties.  Amchem Prods., Inc. v. Newport News Circuit Court Asbestos Cases Plaintiffs, 264 Va. 89, 98, 563 S.E.2d 739, 744 (2002); TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C., 263 Va. 116, 119, 557 S.E.2d 199, 200 (2002).

We consider the contract as a whole and do not place emphasis on isolated terms.  American Spirit Ins. Co. v. Owens, 261 Va. 270, 275, 541 S.E.2d 553, 555 (2001); Lansdowne Dev. Co. v. Xerox Realty Corp., 257 Va. 392, 401, 514 S.E.2d 157, 161 (1999).  When contract terms are clear and unambiguous, a court must accord those terms their plain meaning.  Standard Banner Coal Corp. v. Rapoca Energy Co., LP, 265 Va. 320, 325, 576 S.E.2d 435, 437 (2003); Amchem Prods., Inc., 264 Va. at 98, 563 S.E.2d at 744; Owens, 261 Va. at 275, 541 S.E.2d at 555.  As we have stated, " '[t]he guiding light . . . is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares.' "  Golding v. Floyd, 261 Va. 190, 192, 539 S.E.2d 735, 737 (2001) (quoting W.F. Magann

error, which we refused at the time we considered Quadros' petition for appeal.

6

Corp. v. Virginia-Carolina Elec. Works, Inc., 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962)).

We conclude that the terms of the parties' contract are plain and unambiguous. Under those terms, Quadros was required to start collection procedures on accounts referred by the City after receiving from the City the information necessary to initiate action on those accounts. Quadros was entitled to payment of a percentage of the amounts Quadros actually recovered from delinquent taxpayers, plus reimbursement of certain expenses.

Notably, the parties' contract did not require the City to refer to Quadros a fixed number or percentage of the City's delinquent tax accounts for collection, nor did the contract require the City to provide data relating to the accounts referred according to any particular time schedule. Therefore, under the plain terms of the contract, the City's provision of incomplete information to Quadros for some of the delinquent accounts did not constitute a breach of contract.

In addition, because the contract did not require the City to provide the supporting data at any particular time, the factual dispute regarding whether the City withheld certain data from Quadros for some accounts on which collection proceedings had not begun, was not material to a resolution of the City's duties under the contract. Therefore, we hold that the circuit

7

court did not err in deciding this action on the City's summary judgment motion.  See Rule 3:18; Hansen, 266 Va. at 351, 585 S.E.2d at 571; Thurmond, 265 Va. at 64, 574 S.E.2d at 250.

For these reasons, we will affirm the circuit court's judgment.

Affirmed.